SNYDER, Appellant,

v.

SNYDER et al., Appellees.

[Cite as *Snyder v. Snyder*, 170 Ohio App.3d 26, 2007-Ohio-122.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

No. 2004–A–0056.

Decided Jan. 12, 2007.

Nicholas A. D'Angelo, for appellant.

Jeffrey S. Watson, for appellees.

WILLIAM M. O'NEILL, Judge.

{¶ 1} Appellant, James M. Snyder, appeals the judgment entered by the Ashtabula County Court of Common Pleas. Following a jury trial, the trial court entered judgment in favor of appellees, Wilford F. Snyder ("Wilford") and Bottom Line Sports Lounge, Inc.

{¶ 2} In 1979, appellant was in prison. During his incarceration, his sister, Marjorie Snyder, died in California. Appellant was named as a beneficiary on two life insurance policies. In total, he received about $22,000 from the policies. Appellant's mother, Joyce Snyder ("Joyce"), took the checks to the prison. Appellant signed the checks over to Joyce. Joyce deposited the checks at the bank.

{¶ 3} In 1980, appellant was released from prison. He and his parents, Joyce and Wilford, decided to invest in a bar. Appellant used the majority of the money from the insurance proceeds as a down payment to purchase the bar. The purchase agreement was executed between the prior owner and appellant's parents. Appellant's name was not included on the purchase agreement, the title to the real property, the liquor license, or any other documents. Appellant testified that this was because he had a felony conviction, which precluded him from owning a liquor license.

{¶ 4} In 1982, appellant was involved in a motorcycle accident. As a result of the accident, he received a $10,000 settlement. Appellant testified that this money was put into the bar. In 1983, Joyce and Wilford obtained a mortgage on the bar. Through the mortgage, they paid off the debt owed to the prior owner. Appellant's name was not on the mortgage.

{¶ 5} During the late 1980s and the 1990s, appellant spent a significant amount of time in prison. During this time, Joyce Snyder would deposit portions of the "pool table money" into his prison account.

{¶ 6} In 1994, the mortgage on the bar was paid off. In 1996, Joyce and Wilford incorporated the bar as Bottom Line Sports Lounge, Inc. Joyce and Wilford were the only shareholders.

{¶ 7} In 1999, appellant was released from prison. He and Joyce worked out a deal in which Joyce would pay appellant $175 to $200 per week from the bar proceeds. This arrangement continued through the spring of 2000, when Joyce became sick. Joyce instructed her daughter, Kelly Wojtowicz (appellant's sister, "Kelly"), to continue to make this payment to appellant. In April 2000, Joyce died. Shortly after her death, Wilford became aware of the payments to appellant and ordered them to be stopped. Joyce's will left everything to Wilford, including her shares of Bottom Line Sports Bar, Inc.

{¶ 8} In October 2002, Wilford sold the bar. The purchase price for the bar was $200,000. However, appellant testified that he believes there was an additional $100,000 under the table.

{¶ 9} In October 2002, appellant initiated this complaint against appellees for unjust enrichment and a declaratory judgment that he was a part owner of the bar. Appellant filed a motion for a preliminary injunction, prohibiting appellees from distributing the proceeds from the sale of the bar. A hearing was held on appellant's motion. Following the hearing, the trial court granted appellant's motion and required appellant to post a $20,000 bond.

{¶ 10} In July 2003, appellees filed a motion for summary judgment. The trial court granted appellees' motion as to appellant's complaint for a share of the profits, holding that appellant's claim that he was entitled to half of the profits from the bar pursuant to an oral contract was barred by the statute of limitations. Otherwise, the trial court denied the motion.

{¶ 11} The matter proceeded to a jury trial. The jury returned a general verdict in favor of appellees. In addition, the jury answered three interrogatories. The jury found that appellant had invested in the bar, that appellant did not have an oral contract for the proceeds from the sale of the bar, and that appellees did not breach a contract by not paying appellant.

{¶ 12} Appellant raises four assignments of error. His first assignment of error is:

{¶ 13} "The trial court erred in granting appellees' motion for partial summary judgment as to plaintiff's claim for damages for a share of the profits from the Bottom Line Sports Lounge."

{¶ 14} Pursuant to Civ.R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[1] In addition, it must appear from the evidence and stipulations that reasonable minds can come to only one conclusion, which is adverse to the nonmoving party.[2] The standard of review for the granting of a motion for summary judgment is de novo.[3]

{¶ 15} In *Dresher v. Burt,* the Supreme Court of Ohio set forth a burden-shifting exercise to occur in a summary judgment determination. Initially, the moving party must point to evidentiary materials to show that there are no genuine issues of material fact and they are entitled to judgment as a matter of

---

1. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264.

2. Civ.R. 56(C).

3. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.

law.[4]   If the moving party meets this burden, a reciprocal burden is placed on the nonmoving party to show that there is a genuine issue of fact for trial.[5]

{¶ 16} The trial court found that the accrual date for the cause of action regarding the alleged oral contract concerning profits was 1994, when the mortgage on the bar was paid off.   Accordingly, the trial court found that appellant's cause of action was barred by the statute of limitations.[6]

{¶ 17} Since we review a summary judgment de novo, we will not address the trial court's analysis that the statute of limitations had expired regarding the alleged oral contract.   Instead, we will focus on whether the alleged contract was ever legal and enforceable.

{¶ 18} At the jury trial, appellant testified that he was a convicted felon, and that is the reason his name did not appear on the deed to the property.   This information was given at trial, subsequent to the trial court ruling on the motion for summary judgment.   However, the record contains sufficient evidence submitted prior to the trial court ruling on the motion for summary judgment to support the conclusion that appellant had been convicted of a felony at the time the alleged contract was entered into.

{¶ 19} In his affidavit attached to his motion for summary judgment, appellant stated that he had been incarcerated at various times from 1976 through 1999. In his deposition, a copy of which was attached to appellee's motion in opposition to appellant's motion for summary judgment and cross-motion for summary judgment, appellant states that he was released from prison in 1980.   Further, in Wilford's deposition, a copy of which was also attached to appellee's motion in opposition to appellant's motion for summary judgment and cross-motion for summary judgment, Wilford stated that he paid two attorneys a total of more than $10,000 in 1976 to represent appellant in a criminal matter.   Taken together, this evidence demonstrates that appellant was convicted of a felony prior to 1980.

{¶ 20} Additionally, at his deposition, appellant testified that his name was not on the purchase agreement for the bar or on the deed to the property, and he was not listed as a lienholder for the liquor license or on any UCC filings related to the bar.

{¶ 21} The current version of R.C. 4303.29 provides that "[t]he division [of liquor control] may refuse to issue any [liquor] permit to or refuse to renew any permit of any person convicted of any felony that is reasonably related to the

---

4.   *Dresher v. Burt,* 75 Ohio St.3d at 293, 662 N.E.2d 264.

5.   Id.

6.   See R.C. 2305.07.

person's fitness to operate a liquor permit business in this state."[7] However, the version of R.C. 4303.29 in effect when the alleged contract between appellant and his parents was entered into provided that "[n]o person heretofore convicted of any felony shall receive or be permitted to retain any [liquor] permit; nor shall such person have an interest, directly or indirectly, in any permit." Unlike the current version of the statute, the former version of R.C. 4303.29 did not give the division discretion in issuing a permit to a convicted felon. Instead, the former version of R.C. 4303.29 prohibited a convicted felon from obtaining any interest in a liquor permit, regardless of the type of felony conviction.

{¶ 22} Appellant, as a convicted felon, was precluded from having any interest in the permit. The Tenth Appellate District has held that a corporation's liquor permits were properly revoked by the Ohio Liquor Control Commission when a convicted felon had an interest in the corporation's business, which was operating bars.[8] We note that the *Campus Businesses* case was decided under the former version of R.C. 4303.29, which prohibited felons from involvement in liquor permit premises.[9]

{¶ 23} In addition, R.C. 4303.292 provides:

{¶ 24} "(A) The division of liquor control may refuse to issue, transfer the ownership of, or renew, and shall refuse to transfer the location of any retail [liquor] permit issued under this chapter if it finds:

{¶ 25} "(1) That the applicant, any partner, member, officer, director, or manager thereof, or any shareholder owing ten percent or more of its capital stock:

{¶ 26} "(a) Has been convicted at any time of a crime which relates to fitness to operate a liquor establishment.

{¶ 27} "* * *

{¶ 28} "(c) Has misrepresented a material fact in applying to the division for a permit."

{¶ 29} The current version of the above-quoted portions of R.C. 4303.292 is substantially similar to the version in effect when the alleged contract was entered into.

---

**7.** R.C. 4303.29(A).

**8.** *Campus Businesses Ltd. Partnership v. Liquor Control Comm.* (1992), 82 Ohio App.3d 14, 15–16, 610 N.E.2d 1173.

**9.** Id. at 16–17, 610 N.E.2d 1173.

{¶ 30} Since appellant had been convicted of a crime, this fact could have precluded the issuance of a permit.[10] Moreover, the evidence suggests that appellant's name was not on the liquor permit issued to his parents. Presumably, appellant's name was likewise omitted from the application for the liquor permit. If appellant did have an ownership interest in the bar, and his name was not included on the application, this scenario could be considered a violation of R.C. 4303.292(A)(1)(c).[11] Similarly, the Tenth District held that the concealment of a convicted felon's involvement by a corporation seeking a permit might constitute a violation of R.C. 4303.292(A)(1)(c).[12]

{¶ 31} Finally, R.C. 4303.293(A) provides that "[a]ny person making application concerning a [liquor] permit to conduct a business for which a permit is required under this chapter shall list on the application the name and address of each person having a legal or beneficial interest in the ownership of the business." This language is substantially similar to the language in the version of R.C. 4303.293 in effect when the alleged contract was entered into. Again, if appellant and his parents had an oral contract regarding appellant's ownership of the bar, appellant's name and address needed to be listed on the application for the permit. Otherwise, a violation of R.C. 4303.293 would occur.[13]

{¶ 32} If appellant and his parents had entered into an oral contract regarding appellant's ownership interest in the bar, the alleged contract would be contrary to portions of then-existing versions of R.C. 4303.29, 4303.292, and/or 4303.293. Which of the statutes was violated would depend on whether appellant's name was included on the permit application. Since the alleged oral contract violated portions of the then-existing version of R.C. Chapter 4303, the alleged contract would be illegal. An illegal contract is "[a] promise that is prohibited because the performance, formation, or object of the agreement is against the law."[14] This court has previously stated that "Ohio courts will not enforce an illegal contract * * * because no rights can arise from an illegal contract."[15]

---

10. R.C. 4303.292(A)(1)(a).

11. See, e.g., *Smiley v. Dept. of Liquor Control* (App.1951), 62 Ohio Law Abs. 346, 107 N.E.2d 412.

12. *Campus Businesses Ltd. Partnership v. Liquor Control Comm.*, 82 Ohio App.3d at 17, 610 N.E.2d 1173.

13. Id.

14. Black's Law Dictionary (8th Ed.Rev.2004) 345.

15. *Karlen v. Steele* (Sept. 15, 2000), 11th Dist. No. 99–T–0076, 2000 WL 1335785, at *5, citing *Walsh v. Bollas* (1992), 82 Ohio App.3d 588, 593, 612 N.E.2d 1252.

**34**

{¶ 33} Since the alleged contract would be an illegal contract, appellant is not entitled to enforcement. Thus, summary judgment against appellant on this issue was ultimately correct.

{¶ 34} Appellant's first assignment of error is without merit.

{¶ 35} Appellant's second assignment of error is:

{¶ 36} "The jury's verdict, as stated in interrogatory # 2 that appellant did not have a contract with appellees to share in the proceeds of the sale of the bar, was against the manifest weight of the evidence."

{¶ 37} While we have concluded that any oral contract between appellant and his parents to split the profits of the bar would have been illegal and unenforceable, we will address this assigned error on the merits. This is because the jury ultimately determined that a contract did not exist regarding the proceeds from the sale of the bar.

{¶ 38} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." [16]

{¶ 39} There was no evidence presented regarding a written contract. Instead, appellant claims that he had an oral contract with his parents.

{¶ 40} "The elements of a contract include the following: an offer, an acceptance, contractual capacity, consideration (the bargained-for legal benefit or detriment), a manifestation of mutual assent, and legality of object and of consideration." [17]

{¶ 41} On appeal, appellant essentially argues that since he established the existence of an investment in the bar, there must have been a contract. Appellant, as the plaintiff, bore the burden of proof. He needed to prove the existence of an oral contract. The fact that he invested in the bar, standing alone, does not prove that there was an oral contract for half the proceeds from the sale of the bar.

{¶ 42} Appellant testified that the oral contract provided that he was a 50–50 owner with his parents. However, all of the legal documents indicated that the business and the real estate were owned exclusively by Joyce and Wilford. Finally, Wilford testified that he had made several significant payments on behalf

---

16. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

17. *Lake Land Emp. Group of Akron, L.L.C. v. Columber,* 101 Ohio St.3d 242, 2004-Ohio-786, 804 N.E.2d 27, at ¶ 14, citing *Kostelnik v. Helper,* 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, at ¶ 16.

of appellant, including $12,000 to settle a personal injury lawsuit and about $15,000 in attorney fees. In addition, he testified that he had paid all of the expenses associated with the funeral of Marjorie Snyder, appellant's sister.

{¶ 43} Upon reviewing the evidence presented at trial, we cannot say that the jury's conclusion that appellant had invested in the bar, but that he did not have an oral contract with appellees for half the proceeds from the sale of the bar, was against the manifest weight of the evidence.

{¶ 44} Appellant's second assignment of error is without merit.

{¶ 45} Appellant's third assignment of error is:

{¶ 46} "The trial court abused its discretion in excluding evidence of statements by Joyce Snyder, deceased, as to the existence of an agreement between appellant and appellees."

{¶ 47} "The decision of whether * * * to admit evidence rests in the sound discretion of the court and will not be disturbed absent an abuse of that discretion." [18] The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.[19]

{¶ 48} In his appellate brief, appellant directs this court's attention to four instances in which the trial court prohibited him from introducing statements from Joyce. Appellant failed to proffer the proposed testimony in any of these instances. The purpose of a proffer is to assist the reviewing court in determining, pursuant to Evid.R. 103, whether the trial court's exclusion of evidence affected a substantial right of the appellant.[20] Appellant did cite the transcript from the preliminary-injunction hearing. However, in comparing the two, we are only able to discern that the testimony of Claudia Long corresponds to her trial testimony when the trial court sustained an objection. Therefore, we will focus on this instance.

{¶ 49} The statements made by Joyce to Claudia were hearsay statements. They were made out of court and were being offered to prove the truth of the

---

18. *Wightman v. Consol. Rail Corp.* (1999), 86 Ohio St.3d 431, 437, 715 N.E.2d 546, citing *Peters v. Ohio State Lottery Comm.* (1992), 63 Ohio St.3d 296, 299, 587 N.E.2d 290.

19. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

20. *In re Byerly,* 11th Dist. Nos. 2001–P–0158 and 2001–P–0159, 2004-Ohio-523, 2004 WL 231804, at ¶ 24, citing *Fireman's Fund Ins. Co. v. Mitchell–Peterson, Inc.* (1989), 63 Ohio App.3d 319, 329, 578 N.E.2d 851, citing *State v. Gilmore* (1986), 28 Ohio St.3d 190, 28 OBR 278, 503 N.E.2d 147, syllabus.

matter asserted.[21]   However, there are certain exceptions to the hearsay rule. One of the exceptions is Evid.R. 804(B)(3), which provides:

{¶ 50} "The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

{¶ 51} "* * *

{¶ 52} "(3) *Statement against interest.*   A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest * * * that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true."

{¶ 53} The following colloquy occurred at the preliminary-injunction hearing when Claudia Long was testifying.   Since we are considering this testimony as appellant's proffer, we will examine the following:

{¶ 54} "Q. Did you ever hear Joyce's acknowledgment of [appellant's] investment in the bar?

{¶ 55} "Mr. Watson:  Objection.

{¶ 56} "The Court:  Overruled.

{¶ 57} "A. Yes.

{¶ 58} "Q. How often?

{¶ 59} "A. Quite often.

{¶ 60} "Q. And what did she say?

{¶ 61} "A. That [appellant] put money in this bar so later in life he has something to fall back on.   He invested money in the bar with the family and that was supposed to be a family business for everybody."

{¶ 62} This court has held that a similar statement is admissible as a statement against interest.[22]   In *Trimble v. Stewart,* a father sued his deceased daughter's estate for money that he asserted she was "holding" for him in her money market account.   This court held that a statement made by the daughter prior to her death, indicating that the money was her father's, was a statement against interest pursuant to Evid.R. 804(B)(3) and, thus, admissible.[23]   The statement in the case at bar is analogous to the statement at issue in *Trimble v. Stewart,* in that both declarants state that their ownership interest is less than it appears to be.   Specifically, in both instances, the declarants were the documented owner of the property in question.   However, their statements indicated that someone else

21.   Evid.R. 801(C).

22.   *Trimble v. Stewart* (Feb. 12, 1988), 11th Dist. No. 1327, 1988 WL 14074.

23.   Id. at *2.

had an interest in that property. Such statements are against the declarants' pecuniary interest.

{¶ 63} Appellees cite the Ninth Appellate District's decision in *Levens Corp. v. Aberth,* in support of their argument that Joyce's statements should not have been admitted.[24] We disagree. In *Levens Corp. v. Aberth,* the court ruled that the statement did not subject the declarant to civil liability; the court did not address whether the statement was against the declarant's pecuniary interest.[25]

{¶ 64} The trial court should have allowed Claudia Long to testify as to the statements made by Joyce, since they were against Joyce's pecuniary interest when she made them. However, we decline to find merit in appellant's assigned error, because he has failed to demonstrate how this error affected a substantial right.[26]

{¶ 65} The proposed testimony from Claudia Long suggested that Joyce had acknowledged that appellant had invested in the bar. There was significant evidence presented regarding appellant's investment in the bar, and the jury found that appellant had, in fact, invested in the bar. In addition, we note that Claudia Long testified at the trial that Wilford made a nearly identical comment, regarding appellant having something to fall back on later in life. Thus, the substantive portions of the excluded testimony were presented to the jury.

{¶ 66} Moreover, while the hearsay statement indicates that there was an investment in the bar, it does not demonstrate the existence of an oral contract for the proceeds of the bar, upon its sale.

{¶ 67} Appellant's third assignment of error is without merit.

{¶ 68} Appellant's fourth assignment of error is:

{¶ 69} "The trial court erred in denying appellant's motion for judgment notwithstanding the verdict and failing to set aside the jury verdict, which constitutes plain error in light of the inconsistent answers to the jury interrogatories."

{¶ 70} "The standards applied to motions for directed verdict and motions for judgment notwithstanding the verdict are identical.[27] Specifically,

---

24. *Levens Corp. v. Aberth* (Feb. 10, 1993), 9th Dist. No. 15661, 1993 WL 28574.

25. Id. at *4.

26. Id. at *4, citing *Leichtamer v. Am. Motors Corp.* (1981), 67 Ohio St.2d 456, 474–475, 21 O.O.3d 285, 424 N.E.2d 568. See, also, Civ.R. 61.

27. *Nickell v. Gonzalez* (1985), 17 Ohio St.3d 136, 137, 17 OBR 281, 477 N.E.2d 1145, citing *Ayers v. Woodard* (1957), 166 Ohio St. 138, 1 O.O.2d 377, 140 N.E.2d 401, paragraph one of the syllabus.

either motion should be granted when 'the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party.' [28]" 29

{¶ 71} As noted in our analysis of appellant's second assignment of error, the jury could reasonably conclude that appellant invested in the bar and, at the same time, conclude that he did not have an oral contract for the proceeds from the sale of the bar. Thus, when the evidence is construed most strongly in appellees' favor, we cannot say that reasonable minds could only come to the conclusion that appellant had an oral contract for the proceeds from the sale of the bar.

{¶ 72} Appellant's fourth assignment of error is without merit.

{¶ 73} The judgment of the trial court is affirmed.

Judgment affirmed.

RICE and O'TOOLE, JJ., concur.

---

28.  Civ.R. 50(A)(4).

29.  *Mantua Mfg. Co. v. Commerce Exchange Bank* (1996), 75 Ohio St.3d 1, 4, 661 N.E.2d 161.