[Cite as *Walter Music & Vending Co. v. Hungarian Culture Club*, 2019-Ohio-1309.]

COURT OF APPEALS
LAKE COUNTY, OHIO
ELEVENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| WALTER MUSIC AND VENDING CO., | : | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee/Cross<br>Appellant | : | Hon. Patricia A. Delaney, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | : | Sitting by Assignment by the<br>Supreme Court of Ohio |
| HUNGARIAN CULTURE CLUB, | : | Case No. 2018-L-069 |
| Defendant - Appellant/Cross<br>Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Lake County Court
of Common Pleas, Case No.
15CV001020

JUDGMENT: Affirmed

DATE OF JUDGMENT: April 1, 2019

APPEARANCES:

For Plaintiff-Appellee/ Cross Appellant

For Defendant-Appellant/Cross
Appellee

DOMINIC JOSEPH VITANTONIO
Argie D'Amico & Vitantonio
6449 Wilson Mills Road
Mayfield Village, Ohio 44143-3402

GLEN E. FORBES
Cooper & Forbes Co., LPA
166 Main Street
Painesville, Ohio 44077-3993

MARY JANE TRAPP
EZIO A. LISTATI
LEO M. SPELLACY
JOSEPH N. CINDRIC
Thrasher, Dinsmore & Dolan, LPA
1111 Superior Ave., Suite 412
Cleveland, Ohio 44114

*Baldwin, J.*

{¶1}  Hungarian Culture Club appeals the decision of the Lake County Court of Common Pleas finding that it breached its lease agreement with appellee, Walter Music and Vending Co., and awarding damages in the amount of $168, 456.37 plus interest at the rate of 4% from the date of judgment and costs.  Appellee cross appeals asserting the trial court erroneously limited the amount of damages.

## STATEMENT OF FACTS AND THE CASE

{¶2}  Appellant is a social club with approximately 700 members, located in Fairport Harbor.  Appellant maintains a bar and banquet hall at the club for the use of the members on a daily basis and for special events.  Appellee leased space from appellant and installed a pool table, a juke box and various electronic games beginning in 2004 and ending in February 2015 when the principals of appellee were charged with several offenses related to gambling and electronic games, including one known as Puzzle Bug. The games were removed from appellant's property on February 24, 2015, and, in May 2015, appellant entered into an arrangement with a club member for the provision of electronic raffle machines.  Appellee objected to the installation of the new machines as a breach of the lease, but appellant did not relent and did not permit appellee to reinstall any video games at the club. Appellee thereafter filed this action.

{¶3}  Appellant and appellee entered into an informal agreement for the placement of various games at the club in early 2004.  The original agreement was not in writing, but the records show that the appellee initially installed a pool table and various electronic games, including the game that was the focus of litigation, a video based device known as Puzzle Bug.  Puzzle Bug was incredibly lucrative.  Each machine would gross

approximately thirty thousand dollars per year, the proceeds of which were shared by appellee and appellant.

{¶4}   Appellee presented appellant with a written contract in 2010 memorializing their agreement as a lease of space in the club for which the appellant received a share of the proceeds from the games installed in that space.  The space to be leased and the agreed payment was described as follows:

> The floor areas, specifically determined and bounded by the location, or relocation, on the principal premises by mutual agreement, of [appellee's] equipment or substitute equipment, the agreed locations of the equipment being on the leased premises, along with the easement of access to service, repair and replace the same for the following additional considerations to [appellant]:
>
> Music: Internet Juke, 40%, after 20% download deduction and DSL/cable fee (if applicable).
>
> Games: pool table, 40%; skill-based games (Puzzle Bugs, etc.), 50%; TicTac fruit (other Fill games), 40%.

(Plaintiff's Exhibit 1).

{¶5}   The percentages reference a share of the gross proceeds deposited within the machines by the club members using them.  Appellee's representative visited the club on a regular basis to collect the funds and, at that time, appellant would be paid its share of the proceeds.

{¶6}   Appellee had the exclusive right to place games at the club:

[Appellant] agrees that [appellee] shall have SOLE AND EXCLUSIVE RIGHT to place on [appellant's] premises equipment of the types described, and may replace it with similar equipment reasonably determined by [appellee] to be suitable for [appellant's] premises and the nature of its operation, and operator may at its sole discretion remove all equipment and terminate this agreement if deciding the collection income does not justify retaining equipment in place. (Emphasis sic.)

(Plaintiff's Exhibit 1).

{¶7} Appellee never objected to the installation of the Puzzle Bug machines at its club, despite what can be interpreted as some knowledge regarding the risk of operating the game. Matthew Carlson, the bar manager conceded that the club paid cash prizes only to club members or known visitors, and awarded gas cards to unknown guests, presumably to avoid disclosing cash payments to the authorities. (Trial Transcript, p 369-376).

{¶8} The lease agreement provided for a five year term and automatic renewal:

This lease shall be binding upon the parties, their heirs, executors, administrators, successors and assigns for a term of 5 years commencing the 5 day of March 2010 AND SHALL AUTOMATICALLY RENEW AT THE END OF THE TERM OR ANY EXTENDED TERM FOR A LIKE TERM OF THE SAME NUMBER OF YEARS, UNLESS (sic) either party gives the other party written notice of the termination of this lease by certified mail not less than ninety (90) days before the end of any term. (Emphasis sic.)

(Plaintiff's Exhibit 1).

**{¶9}** The parties did not dispute that the lease automatically renewed in 2015 and would have been effective until 2020.

**{¶10}** The lease was signed by representatives of appellant and appellee and it contains a proper verification by a notary. The notary, Chris Torecki, expressed some doubt as to whether he witnessed the execution of the lease agreement, but the record does not contain a significant inquiry into this matter. The parties did stipulate that the persons who signed were representatives of the parties, authorized to sign on behalf of the parties.

**{¶11}** On February 19, 2015, a local newspaper published an article describing legal action against appellee's principals for a number of criminal offenses related to gambling. Christopher Carlson, president of appellant at the time, became concerned that the appellant may be at risk by continuing its relationship with appellee. The agent who collected the proceeds from the games at the club disabled the Puzzle Bug machines and appellant requested that appellee remove the games from the club. Appellee attempted to reassure appellant that Puzzle Bug was a legal device, but appellant was not convinced and asked that the games be removed. The parties did discuss the situation and appellee insisted that it would not continue its relationship with appellee while the charges against its principals were pending.

**{¶12}** In May 2015 appellant entered into an agreement with Ron McDowell, a club member, for the provision of several Electronic Raffle Machines, or ERMs. The ERMs operated in essentially the same fashion as Puzzle Bugs with some difference in the payout procedure when a player finished playing. Puzzle Bugs would payout only in increments of ten dollars and the player forfeited any excess; the ERMs paid out the entire

balance remaining in the player's account when the game terminated. Both the Puzzle Bug and the ERM produced a ticket for a winner that was given to a club employee in exchange for cash.

{¶13} The appellee kept no records regarding the income or expense from the ERMs. An envelope of cash was kept behind the bar to pay out prizes and the envelope was replenished when necessary from funds collected from the ERMs. The envelope usually contained approximately three thousand dollars and any additional cash from the machines was segregated in a safe. Appellant paid McDowell a flat three thousand dollars per month as a rental for the ERMs regardless of the amount appellee received from the machines.

{¶14} Despite the appellant's expressed concern regarding the legality of Puzzle Bug, it did not take any steps to insure that it could lease and operate ERMs without violating Ohio law.

{¶15} Appellee discovered that appellant had leased the ERMs and asked its counsel to draft a letter notifying appellant that appellee considered the installation a breach of its lease. That letter was delivered on April 26, 2015 and appellant responded in a letter dated June 5, 2015 declining to take any action to correct the alleged breach. Thereafter appellee filed a complaint alleging breach of contract and seeking injunctive relief. Appellant filed an Answer and Counterclaim and a subsequent Amended Answer and Counterclaim alleging breach of contract, unjust enrichment and seeking declaratory judgment.

{¶16} The matter was tried to the court without a jury on April 30, 2018. The trial court summarized the testimony and evidence provided by the parties and found that

appellant had breached the contract and appellee was entitled to damages in the amount of $168,456.37 plus interest in the amount of four percent and costs. The trial court found in favor of the appellant with regard to appellee's claim for injunctive relief and rendered judgment in favor of appellee on appellant's counterclaim for breach of contract, unjust enrichment and for declaratory judgment.

{¶17} Appellant filed a notice of appeal and submitted six assignments of error:

{¶18} "I. The trial court erred in finding that the lease agreement was a valid lease for an automatically renewed five-year term because it failed to consider the requirements of the statute of conveyances R.C. 5301.01."

{¶19} "II. The trial court erred in considering extrinsic evidence outside the four corners of the written lease contract without first determining that any terms of the contract were ambiguous."

{¶20} "III. The trial court erred in finding that the lease agreement was not an illegal contract and does not violate public policy."

{¶21} "IV. The trial court erred in excluding the testimony of Ohio Investigative Unit Agent Boldin that his agency considers the Puzzle Bug to be an illegal gambling device."

{¶22} "V. The trial court erred in excluding the September 30, 2013 Report of Examination issued by the FBI Laboratory."

{¶23} "VI. The trial court erred in its calculation of damages."

{¶24} Appellee filed a cross appeal and submitted the following assignment of error:

**{¶25}** "I. the trial court erred in calculating the damages that are due to Walter Music as a result of HCC's breach of contract."

## ANALYSIS

**{¶26}** Appellant's first assignment of error contends that the trial court erred by failing to apply the Statute of Conveyances, R.C. 5301.01 which appellant argues would impact the term of the lease and reduce, if not eliminate, any damages that might be claimed as a result. Appellee responds that appellant failed to argue this matter before the court and thus waived the issue. Appellant contends that the notarization was brought to the attention of the court and that its answer can be liberally interpreted to include this allegation.

**{¶27}** Because resolution of this issue requires interpretation of the Revised Code, the abuse of discretion standard does not apply. Questions of statutory interpretation are questions of law, which are reviewed de novo. *Riedel v. Consol. Rail Corp.,* 125 Ohio St.3d 358, 2010–Ohio–1926, ¶ 6, 928 N.E.2d 448 (2010).

**{¶28}** The lease was offered at trial as Plaintiff's Exhibit 1 and the document contains the signatures of the parties' representatives, two witnesses and it bears the signature of a notary and notarial seal. Neither party contends the execution of the document was the result of fraud or coercion. Jeff White, Service Manager for appellee has only a vague recollection of the signing and cannot with certainty recall who was present or when it was notarized. During trial the notary, Chris Torecki, expressed some doubt regarding his presence for the signing of the lease:

Q.      Were you present at the club the day that the lease agreement was

signed?

A.      I don't believe so.

Q.      But you subsequently notarized that document?

A.       Yes, that's my signature.

Q.      Is that a common practice that you notarize documents that you don't witness being signed?

A.      No, it's not.

Q.      So why did that happened in this case?

A.       I'm assuming sometimes there is an agreement done at the office and I'm not in and there was no witnesses there and I notarize when I come in when Walter signs his name on it.

Q.      So you didn't have any personal knowledge that those three individuals from the club signed the document?

A.      No, I can't recall.

(Trial Transcript, Page 145, Lines 4-20).

{¶26} Neither party pursued this matter any further so it is impossible to determine if any defect in the notarization was cured at a later time. The parties did take steps to attempt to cure any defect at trial by entering into "a stipulation with respect to the lease agreement that it was signed by the persons who purported to sign it and those persons had authority to sign it" (Trial Transcript, page 184, lines 6-10). During closing argument appellant's counsel stated that he "was troubled by the fact that Mr. Torecki notarized the document without even being present there" but the transcript contains no further argument or mention of the issue. Neither the phrase "Statute of Conveyances" nor a reference to R.C. 5301.01 appears in the record or in the appellant's trial brief. After

reviewing the record, we can only conclude that this argument is made in hindsight. Not unexpectedly, the trial court did not address the issue and this court, therefor, will not consider the issue.

Ordinarily, reviewing courts do not consider questions not presented to the court whose judgment is sought to be reversed." *Goldberg v. Indus. Comm.* (1936), 131 Ohio St. 399, 404, 6 O.O. 108, 110, 3 N.E.2d 364, 367.

\*\*\*

These rules are deeply embedded in a just regard to the fair administration of justice. They are designed to afford the opposing party a meaningful opportunity to respond to issues or errors that may affect or vitiate his or her cause. Thus, they do not permit a party to sit idly by until he or she loses on one ground only to avail himself or herself of another on appeal. In addition, they protect the role of the courts and the dignity of the proceedings before them by imposing upon counsel the duty to exercise diligence in his or her own cause and to aid the court rather than silently mislead it into the commission of error. (Citations omitted.)

*State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 81, 1997-Ohio-71, 679 N.E.2d 706 (1997).

**{¶28}** We hold that appellant failed to present this issue to the trial court in the case below, so we will not consider it in this appeal. If we were to review this assignment, we would conclude there is insufficient evidence to support appellant's contention that the

facially valid notarization should be found defective.    First, we note that "One can acknowledge that they executed the instrument under R.C. 147.541(B) by **telling the notary that he already signed it** or by merely signing it in front of the notary." (Emphasis added.)*Taylor v. Kemp*, 7th Dist. Belmont No. 05 BE 13, 2005-Ohio-6787, ¶ 44. The record does not contain any evidence to rule out that any defect was not subsequently cured, and the parties have conceded that the signatures are genuine.  That evidence, in the context of the Supreme Court of Ohio's ruling that "[i]n the absence of "clear and convincing" evidence to the contrary, a facially valid notarized document will not be held invalid," *State, ex rel. Humble v. Brown* (1977), 52 Ohio St.2d 9, 12, supports the validity of the document.  The lack of clear testimony regarding the circumstances surrounding the signature and the parties' stipulated cure prevents a conclusion that the record contains clear and convincing evidence that the lease is invalid as a result of a defective execution.

{¶29} The appellant's first assignment of error is overruled.

{¶30} In its second assignment of error, appellant contends that the trial court inappropriately considered extrinsic evidence without concluding that the terms of the contract were ambiguous.  Appellant is referring to the trial court's consideration of its affirmative defenses on page six and seven of the judgment entry:

> HCC argues that the agreement is illegal, and violates public policy, because it mandates that plaintiff place puzzlebug at the Location, and puzzlebug is an illegal gambling devices (sic). Plaintiff argues that puzzlebug is not an illegal gambling device. That issue is irrelevant however because the agreement is not an agreement to place puzzlebug at HCC.

Rather under the Agreement Plaintiff leased space in the Location to place equipment, which may-but does not have to, include puzzlebug; Plaintiff may also place a jukebox, other skill-based games, fill games or other Equipment. The only evidence before the court is that Plaintiff placed a number of different games at the location over the years, including a pool table and a bowling game, that Plaintiff never placed specific games in a location if the location objected to the specific games, and that Plaintiff could have replaced all of the machines with video games such as Ms. Pac-Man if HCC were generally worried about having any skill based games in the Location. Because the parties could have fully performed the agreement without puzzlebug, and puzzlebug is not the object of the agreement, the agreement is not an illegal contract and does not violate public policy.

(Judgment Entry, May 10, 2018, Page 6-7, Docket #94).

**{¶31}** The construction and interpretation of contracts are matters of law. *Latina v. Woodpath Dev. Co.* (1991), 57 Ohio St.3d 212, 214, 567 N.E.2d 262. An appellate court applies a de novo standard of review to questions of law and may interpret the language of the contract, substituting its interpretation for that of the trial court. *Children's Med. Ctr. v. Ward* (1993), 87 Ohio App.3d 504, 508, 622 N.E.2d 692. Our standard of review for appellant's second and third assignments of error is de novo.

**{¶32}** The trial court did not rely on extrinsic evidence to interpret the contract as it concluded that the contract did not require the placement of Puzzle Bug at the appellant's location. The last sentence of the cited portion of the trial court's entry encapsulates the trial court's decision regarding the interpretation of the contract:

"because the parties could have fully performed the agreement without puzzlebug, and puzzlebug is not the object of the agreement, the agreement is not an illegal contract and does not violate public policy." The facts referenced by the court only served to corroborate its conclusion and are unnecessary to arrive at the conclusion that the contract is not illegal.

**{¶33}** Appellant's second assignment of error is denied.

**{¶34}** The appellant argues the trial court erred in finding that the lease was not an illegal contract in its third assignment of error. Appellant contends the contract was illegal and against public policy because it authorized appellee to place Puzzle Bug, an allegedly illegal gambling device, at its club, exposing appellant, its officers and members to criminal charges. The trial court concluded that while the lease reserved to appellee the exclusive right to place games at appellant's club, the issue regarding the placement of Puzzle Bug was irrelevant because, "under the Agreement Plaintiff leased space in the Location to place Equipment, which may — but does not have to include puzzlebug; Plaintiff may also place a juke box, other skill-based games, fill games, or other Equipment." (Judgment Entry, May 10, 2018, page 6-7, Docket #94). The performance, formation, or object of the agreement is not against the law and it is not a contract to bring about results which the law seeks to prevent. *Snyder v. Snyder,* 170 Ohio App.3d 26, 2007-Ohio-122, 865 N.E.2d 944, ¶32 (11th Dist.). (Citation omitted.); *Brown v. Gallagher*, 179 Ohio App.3d 577, 2008-Ohio-6270, 902 N.E.2d 1037, ¶10 (4th Dist.) (Citations omitted.).

**{¶35}** The object of the agreement is placement of items to entertain the appellant's members and guests and it does not require placement of Puzzle Bug, or any

illegal gambling devices.  If the contract was interpreted to allow placement of an illegal gambling device in violation of Revised Code, that illegal portion of the contract could be rejected without rendering the balance of the contract void.  "When, however, for a legal consideration, a party undertakes to do one or more acts, and some of them are unlawful, the contract is good for so much as is lawful, and void for the residue. Whenever the unlawful part of the contract can be separated from the rest it will be rejected, and the remainder established." *Widoe v. Webb*, 20 Ohio St. 431, 435 (1870). *Accord Suesskind v. Wilson,* 124 Ohio St. 54, 176 N.E. 889, 10 Ohio Law Abs. 94 (1931), syllabus ("Where an agreement founded on a legal consideration contains several promises, or a promise to do several things, and a part only of the things to be done are illegal, the promises which can be separated, or the promise, so far as it can be separated from the illegality, may be valid").

**{¶36}** While the placement and use of Puzzle Bug may be illegal and against public policy, the possibility that such installations may occur under the terms of the contract does not rendered the entire agreement void and unenforceable in this case. Appellant's third assignment of error is denied.

**{¶37}** The appellant, in its fourth assignment of error, asserts the trial court erred by prohibiting the testimony of Ohio Investigative Unit Agent Boldin that his agency considers the Puzzle Bug to be an illegal gambling device.  The trial court ruled, after extensive argument, that "I am not going to let him opine that the Puzzle Bug is an illegal gambling device." (Trial transcript, page 264, lines 7 – 8). After that ruling, Agent Boldin testified at length regarding his experience in cases involving gambling charges arising from the use of Puzzle Bugs.  Appellant did not proffer the testimony of Agent Boldin, so

we have nothing before us to compare with the testimony he did provide to determine what, if any, prejudice occurred.

**{¶38}** The admission or exclusion of evidence rests within the sound discretion of the trial court. *State v. Sage,* 31 Ohio St.3d 173, paragraph two of the syllabus (1987). A trial court's decision to admit or exclude evidence will not be overturned absent an abuse of discretion. *State v. Benson,* 11th Dist. Portage No. 2001-P-0086, 2002-Ohio-6942, ¶ 7, quoting State v. Kinley, 72 Ohio St.3d 491, 497 (1995). "The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.

**{¶39}** Absent an abuse of discretion, as well as a showing that the accused has suffered material prejudice, an appellate court will not disturb a ruling by a trial court as to the admissibility of evidence. *State v. Martin* (1985), 19 Ohio St.3d 122, 129, 483 N.E.2d 1157.

**{¶40}** As to the relevancy of the testimony, the trial court determined that the lease between the parties did not require the provision of Puzzle Bugs or any illegal devices, but only provided broad categories of games that could be provided, rendering the status of the Puzzle Bug as an illegal gambling device irrelevant. We find that the record does not demonstrate that the trial court's holding prohibiting Agent Boldin from testifying that the Puzzle Bug was an illegal gambling device was unreasonable, arbitrary or unconscionable in this context.

**{¶41}** Further, we find that the exclusion of the testimony was not prejudicial considering the testimony of the witness after the ruling. The witness detailed the

operation of the Puzzle Bug, labeled it a slot machine and game of chance and provided extensive testimony regarding the investigation and prosecution of other cases involving Puzzle Bug.  The testimony that was excluded would not have fulfilled the appellant's goal any more than the testimony that was presented.

**{¶42}** In response to the trial court's question "what is the relevance of Bolden telling me if the Ohio Investigative Unit says that they are illegal gambling devices?" Counsel responded "because it is not an idol (sic) threat, Your Honor, they are actually going out prosecuting people that are utilizing this device, convicting them." (Trial Transcript, page 262, lines 18-25). Agent Boldin then proceeded to describe how the Puzzle Bug operated, and that it was considered a slot machine and a game of chance. He testified that he was involved in more than one hundred cases involving the investigation and prosecution relating to the use of the Puzzle Bug and that he continues to be involved in the prosecution of the use of the Puzzle Bug. He was even permitted to testify that in one case, Puzzle Bugs were seized and that a number of other gambling devices were seized, suggesting, without directly stating, that Puzzle Bug is a gambling device.

**{¶43}** Considering the extensive testimony of Agent Boldin regarding the operation of the Puzzle Bug, the fact that it is considered a slot machine, and a game of chance, and the fact that he had been involved in a large number of investigations and prosecutions of the use of Puzzle Bug and "other gambling devices," we cannot find appellant suffered any prejudice as a result of the ruling.

**{¶44}** We have based our holding on the representation of appellant's counsel regarding the content of the agent's excluded testimony.  Appellant did not proffer

additional testimony of the agent, so we can only assume that the testimony would be limited to the testimony that the Puzzle Bug was an illegal gambling device, and we have concluded that the ruling in that context was not an abuse of discretion and did not prejudice the appellant. *Mingo Junction v. Sheline* (1935), 130 Ohio St. 34, 37, 196 N.E. 897.

**{¶45}** Appellant's fourth assignment of error is denied.

**{¶46}** Appellant's Fifth Assignment of error that the trial court erred in excluding the September 30, 2013 report issued by the FBI laboratory is denied for the same reasons provided for the Fourth Assignment of Error. The report was purportedly offered to establish that the Puzzle Bug was an illegal gambling device, a fact that the trial court found irrelevant to its analysis of the claims. We conclude that the trial court did not abuse its discretion in excluding the report and that the exclusion did not prejudice the appellant.

**{¶47}** In appellant's sixth assignment of error, it asserts that the trial court erred in its calculation of damages. Appellee's cross appeal addresses the calculation of damages as well, so we will address the assignments simultaneously.

**{¶48}** The trial court decided the most equitable means of calculating damages was to award no more than what appellant was paying to Ron McDowell for supplying electronic raffle machines. The court used the past five years as a base line and used the actual amount received in the past if it was lower than three thousand dollars per month, the amount paid to Ron McDowell for the installation of the electronic raffle machines. The trial court attached a chart to its entry to provide a clear illustration of the basis of its calculations.

{¶49} Despite the text of the assignment of error, appellant's argument is not directed to any calculation, but is a repetition of its argument that the lease was a periodic lease as a result of an alleged defective notarization and thus terminated when the machines were disabled. We have previously rejected that argument and incorporate that analysis herein and reject appellant's assignment of error.

{¶50} In its cross appeal, appellee contends that the trial court inappropriately capped its damages and that it was entitled to the same amount it had recovered over the past five years with no upper limit. The receipt of that amount was based upon the installation of Puzzle Bug, a game that had been removed at the request of the appellee, and, according to the testimony of appellee's agents and officers, would not be reinstalled over the appellant's objections. While it is evident from the record that the electronic raffle machines installed by McDowell are very profitable, easily providing funds for prize money and payment to Mr. McDowell of three thousand dollars per month, we cannot conclude that the trial court's decision was an abuse of discretion and we will not reverse the trial court's determination of damages absent an abuse of discretion. *Roberts v. United States Fid. & Guar. Co.*, 75 Ohio St.3d 630, 634, 665 N.E.2d 664 (1996).

{¶51} Appellant's sixth assignment of error is denied and appellee's cross appeal is likewise denied.

The decision of Lake County Court of Common Pleas is affirmed.

By: Baldwin, J.

Gwin, P.J. and

Delaney, J. concur.

HON. CRAIG R. BALDWIN

HON. W. SCOTT GWIN

HON. PATRICIA A. DELANEY

CRB/dw

[Cite as *Walter Music & Vending Co. v. Hungarian Culture Club*, 2019-Ohio-1309.]

IN THE COURT OF APPEALS FOR LAKE COUNTY, OHIO

ELEVENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| WALTER MUSIC AND VENDING CO., | : | |
| | : | |
|     Plaintiff - Appellee / Cross Appellant | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| HUNGARIAN CULTURE CLUB., | : | |
| | : | |
|     Defendant - Appellant / | : | |
|     Cross Appellee | : | CASE NO. 2018-L-069 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment
of the Court of Common Pleas of Lake County, Ohio is affirmed. Costs are assessed to
appellant.

Sitting by Assignment by the Supreme
Court of Ohio

---

HON. CRAIG R. BALDWIN

---

HON. W. SCOTT GWIN

---

HON. PATRICIA A. DELANEY